## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

AMAZON.COM, INC., a Delaware
Corporation,

                Plaintiff,

    v.

SENDWELL, INC., a Michigan
corporation; and LAKESHORE
DEVELOPMENT GRP LLC,

                Defendants.

Case No. 20-cv-11422

## COMPLAINT

## I.    INTRODUCTION

1.    Amazon.com, Inc. is one of the most well-known and trusted brands in the world. Amazon takes the protection of its customers and brand seriously. It strives to prevent and to stop harm caused by online bad actors looking to profit off of Amazon's brand.

2.    Defendants Sendwell, Inc. and Lakeshore Development Grp LLC (collectively, "Sendwell") operate an extensive email marketing operation. Defendants are affiliate marketers, which means they are hired to generate traffic for online advertisers.

3.    As part of these efforts, Defendants sent numerous unauthorized emails that used Amazon's registered trademarks and false statements about

Defendants' connection to Amazon in order to generate fraudulent traffic to sell to affiliate networks.  Defendants' messages are crafted to entice victims to click on a link within them.  One example of Defendants' emails is below:



4.      When a victim clicks on the link in Defendants' email, they are redirected through a domain controlled by an affiliate network, and are then redirected to websites controlled by advertisers.  In this case, victims were often redirected to websites controlled by online advertisers that display phony Amazon-branded surveys.  These surveys greet victims as "Amazon Shopper" and, like the Defendants' messages, use Amazon's trademarks.  The phony survey pages also

promise "exclusive rewards" or "an exclusive offer" for the victim's participation. These purported surveys and rewards have no affiliation with Amazon.

5.      Defendants went to great lengths to hide their involvement in this scheme. Defendants used fake information to create accounts at registrars in order to register, acquire, and hold domains used in the scheme. Defendants also purchased identities through online ads on Craigslist, and then used that information to create accounts with hosting providers. Defendants had to use identities purchased online because, on information and belief, hosting providers had blacklisted them.

6.      Amazon brings this lawsuit to stop Defendants' unlawful scheme and hold them accountable for the harm they have caused.

## II.      PARTIES

7.      Amazon is a Delaware corporation with its principal place of business in Seattle, Washington. Through its subsidiaries, Amazon owns and operates the Amazon.com website and equivalent international websites.

8.      Sendwell, Inc. is a Michigan corporation, which on information and belief, has its principal place of business in Bloomfield Hills, Michigan. Sendwell, Inc. is owned and operated by Frederic L. Lusky ("Lusky") and Scott E. Maslowe ("Maslowe"). Sendwell, Inc. is directly liable to Amazon for the damages alleged

in this Complaint, or alternatively, is secondarily liable to Amazon for these damages under principles of secondary liability, including, without limitation, respondeat superior, vicarious liability, and/or contributory liability.

9.     Lakeshore Development Grp LLC is a Michigan company, which on information and belief, has its principal place of business in Bloomfield Hills, Michigan.  Lakeshore Development Group LLC is owned and operated by Lusky. Lakeshore Development Grp LLC is directly liable to Amazon for the damages alleged in this Complaint, or alternatively, is secondarily liable to Amazon for these damages under principles of secondary liability, including, without limitation, respondeat superior, vicarious liability, and/or contributory liability.

### III.   JURISDICTION AND VENUE

10.     The Court has subject matter jurisdiction over Amazon's claims for trademark infringement (15 U.S.C. § 1114), violations of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), trademark dilution (15 U.S.C. § 1125(c)), and cybersquatting (15 U.S.C. § 1125(d)) pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

11.     The Court has general personal jurisdiction over Defendants because, on information and belief, they are residents of this District.  Alternatively, the Court has specific personal jurisdiction over Defendants because they transacted

business and committed tortious acts within this District, and Amazon's claims arise from those activities.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, on information and belief, Defendants are residents of the Eastern District of Michigan and a substantial part of the events giving rise to the claims occurred in this District.

## IV.   FACTS

### A.     Amazon is a Trusted Brand

13.     Amazon is a highly-trusted brand, recognized by millions of consumers throughout the world who use Amazon's online stores to conveniently purchase a wide array of products and services.

14.     In connection with its online stores, Amazon offers gift cards, promotions, and a variety of services.  One of Amazon's most popular offerings is Prime, which is a paid membership program that provides discounts on shipping and free access to digital content (to name just two of Prime's features).

15.     Amazon emails customers in connection with its products and services.  As a result, Amazon's customers have come to expect to receive email communications from Amazon, to use Amazon's services online, and to interact with Amazon online.

16.    Amazon's products and services are readily identifiable to consumers around the world because of the company's substantial and years-long investment of time, money, and other resources in Amazon's brand, including the development of valuable intellectual property.

17.    Amazon exclusively owns numerous U.S. trademark registrations and pending applications.  These trademarks are a critical component of a consumer's ability to readily identify Amazon products and services.

18.    As alleged in this Complaint, the following trademarks and service marks (collectively "Amazon Trademarks") were unlawfully used to further Defendants' scheme:

| **Mark** | **Registration No. (International Classes)** |
|---|---|
| AMAZON | 2,738,837 (Int. Cl. 38) |
| | 2,832,943 (Int. Cl. 35) |
| | 4,907,371 (Int. Cls.:35, 41 and 42) |
| AMAZON.COM | 2,167,345 (Int. Cl. 35) |
| | 2,559,936 (Int. Cl. 35, 36, 42) |
| | 2,633,281 (Int. Cl. 38) |
| | 2,837,138 (Int. Cl. 35) |
| **amazon** | 5,508,999 (Int. Cl. 35) |

| | |
|---|---|
| **amazon.com** | 2,684,128 (Int. Cl. 38) |
| | 2,696,140 (Int. Cl. 42) |
| | 2,970,898 (Int. Cl. 41) |
| | 3,414,814 (Int. Cl. 36) |
| **a** | 3,904,646 (Int. Cl. 35) |
| PRIME | 5,218,535 (Int. Cl. 35) |
| | 5,489,315 (Int. Cl. 42) |
| | 5,218,536 (Int. Cl. 41) |

19.    The Amazon Trademarks have been used exclusively and continuously by Amazon, and have never been abandoned.   The above U.S. registrations for the Amazon Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  The registrations for the Amazon Trademarks constitute prima facie evidence of their validity and of Amazon's exclusive right to use the Amazon Trademarks pursuant to 15 U.S.C. § 1057(b).

## B.    Affiliate Marketing Abuse

20.    A successful website requires internet "traffic," which is a term used to describe online visits to the website.   Website traffic is akin to customers shopping at physical retail stores.   Just as brick-and-mortar stores need foot traffic

to generate sales, websites need traffic in order to monetize the website through sales and advertising revenues.

21.     Affiliate marketing arose from the need to source relevant traffic for websites.  Broadly speaking, an affiliate publishes material to generate traffic on behalf of an advertiser (i.e., the party who wants the traffic for their website).

22.     An affiliate can source traffic through a variety of means, including, relevant to this case, email campaigns and websites that invite users to click through, such as online surveys.

23.     The demand for traffic has spurred the growth of businesses that help connect affiliates and advertisers.  One example of this is an affiliate network, which generally acts as an intermediary between the advertiser and the affiliates. In this model, an advertiser approaches a single network, who then contracts with one or more affiliates to provide traffic for the advertiser.

24.     In email campaigns, like the ones at issue in this case, affiliates use domains designed to redirect online consumers to another domain.  These redirect domains do not render content (such as a webpage of their own) and instead, are generally invisible to consumers.  When people click on links in an affiliate's email webpage, they see only the final landing page, even though they may have passed through multiple redirect domains along the way.

25.    In one common form of affiliate abuse, affiliates generate traffic by impersonating well-known brands such as Amazon.  Affiliates exploit the brand's recognition with customers to entice people to click through to a third-party advertiser's website, often based on false promises of a reward or gift.  The affiliate is then paid for this fraudulent traffic.

26.    The generation of traffic through the misuse of a brand's intellectual property harms people who are deceived by the affiliate's message or website, brands whose intellectual property is damaged by these fraudulent campaigns, and the end advertiser who ultimately pays for the traffic.

### C.    Defendants' Unlawful Affiliate Marketing Scheme

27.    Defendants are engaged in a widespread, fraudulent marketing scheme that bombards victims with unauthorized emails and abuses Amazon's brand to generate traffic.  Defendants profit from these emails by selling the traffic to affiliate marketing networks.

28.    As explained below, Defendants' scheme involves four main stages. First, Defendants design and send emails that display the Amazon Trademarks and entice consumers to click a link in the messages.  Second, Defendants redirect (and sell) traffic from these emails to affiliate networks, which, oftentimes direct those consumers to a phony "survey" website hosted by an advertiser.  Third, the

websites to which Defendants' victims are directed use Amazon's brand to deceive victims into clicking through a phony survey about shopping on Amazon. Fourth, the survey owner redirects (and sells) traffic from the survey websites to other affiliate networks, which in turn direct victims to websites controlled by other advertisers.

> ### 1.    Defendants Send Victims Unauthorized Amazon-Branded Emails

29.    To source traffic, Defendants send unauthorized emails that are intentionally designed to deceive victims into believing they originate with Amazon.

30.    Defendants use Amazon's brand to entice victims to click on the links in the emails—which is how Defendants earn money from this scheme. Amazon's brand helps legitimize Defendants' emails and increases the likelihood that victims will click on the link.

31.    Among other tactics, Defendants use numerous counterfeit versions of the Amazon Trademarks. They also make false or misleading statements about Amazon.

32.    A partial screenshot of one of Defendants' emails is below:



33.    A partial screenshot of another email sent by Defendants is below:

*[Image on following page]*



34.    A partial screenshot of a third email sent by Defendants is below:

*[Image on following page]*



35.     Defendants' deception starts with the "from" address displayed to the victim.  Defendants create email addresses that use Amazon's brand, including the Amazon Trademarks.  In the first two examples above, Defendants used the email addresses "AmazonPrimeReward Status" (amazonprimereward.status@) and "Gregfrom Amazon" (gregfrom.amazon@), respectively.  Other email addresses Defendants used were amazon@merrilledgeinvestment.com,

amazon@diableimmortal.com, prime.bonus@bellasforward.com,

amazon.perks@fondationeaccess.com, amazon@frnchest.com, and

amazon.survey@fasionsitejerseys.com.

36.     Defendants registered, used, or trafficked in domains containing the

Amazon Trademarks, including amazoncashe.com, amazonhonecareer.com, and

amazonchicagojobs.com.   These domains are connected to a server Defendants

used to send Amazon-branded emails.

37.     Defendants also design the "subject" lines of the emails to deceive

victims into believing the messages originate with Amazon.  The subject lines from

several emails sent by Defendants include "Act fast to claim your Amazon rewards

for June," "You can now unlock your Amazon card perks for October," and "We

just added a one-time-credit to your Amazon account."

38.     Defendants designed the bodies of the emails to continue to use the

Amazon Trademarks and other misleading statements and images. Emails sent by

Defendants often start by displaying a counterfeit of the Amazon Trademarks.

Others go on to suggest that Amazon offers "Bonus Rewards."

39.     To further entice victims to click the links in these emails, Defendants

use false claims of limited availability and other high pressure sales tactics.  For

example, one of Defendants' emails states that victims "have only a few days left

to claim your bonus on Amazon."

40.    Defendants also use misleading "offers" that further reinforce a connection between Amazon and the emails.  For example, one of Defendants' emails states "How about an extra hundred to add items to your cart?"  Defendants did not offer the victim an "extra hundred."

41.    Some of Defendants' emails even include additional features designed to mimic genuine emails from Amazon, including links labeled "Your Account," "Prime," and "Today's Deals."

42.    None of Defendants emails were approved by or affiliated with Amazon.

### 2.    Defendants Refer Victims to Affiliate Networks

43.    When a victim clicks the link contained in Defendants' email, Defendants redirect the victim to a domain controlled by an affiliate network.  This domain does not render content in the victim's browser, but serves to redirect traffic.

44.    Two of the domains to which Defendants directed their traffic from Amazon-branded emails, tboksolutions.com and prematrinela.com, were registered with Name.com, Inc. and controlled by an affiliate network named Traffic Goats.

45.    Defendants sold traffic generated from their Amazon-branded emails to Traffic Goats.

46.    On information and belief, Defendants also monetized their Amazon-branded emails through accounts with other affiliate networks.

### 3.    Survey Page Owners Deceive Victims into Clicking Through a Phony Amazon-Branded "Survey"

47.    The affiliate networks that received traffic from Defendants redirected victims to domains controlled by advertisers.

48.    At least a significant portion of the traffic Defendants sourced from Amazon-branded emails was ultimately sent to websites that displayed phony Amazon-branded surveys.  There were multiple versions of the Amazon-branded surveys, and they were hosted at domains that included tadomin.com and surveyee.com.

49.    In one version of the survey, when a victim first arrived on the website, they saw a greeting that addresses the victim as "Amazon Shopper."  The message invited the victim to complete a survey "about your experiences with Amazon" in order to get "carefully selected reward offers (worth at least $80)."  A partial screenshot of this message is below:

*[Image on following page]*



50.     In this example, victims who started the survey saw a webpage that contained a header using one of the Amazon Trademarks and the words "Shopper Survey."  Below that header, the victim was presented with a series of questions that often related to Amazon and its business (such as "Do you own an Amazon Echo (Alexa) or Dot?," and "Have you ever bought groceries from Amazon Fresh?").  In this particular version, the survey page owner intentionally mimicked Amazon's designs and color schemes, including Amazon's navy blue banner

heading and gold rectangular buttons to indicate options victims could select. A partial screenshot of an example question is below:



51.     Despite the numerous representations to the contrary, these Amazon-branded surveys are not collecting victims' responses. Rather, the purpose of the surveys is merely to cause victims to click through the survey page websites.

### 4.     Victims Who Complete the "Surveys" Are Referred to Affiliate Networks and Advertisers

52.     When victims finish the phony survey, they are presented with a page where they supposedly "claim" their "offer" or "reward" for completing the survey. One example of this "offer" page is below:

*[Image on following page]*



53.     The page thanks victims for "completing the survey!" under a heading with a prominent Amazon trademark.

54.     The survey pages present these products as free or heavily discounted "offers."  However, the links on this page merely send the victim to an affiliate network that purchases the traffic from the survey page owner.

55.     Similar to what happens after a victim clicked the link in Defendants' email, clicking one of the survey "offers" sends the victim through a series of

redirect domains.  Ultimately, the affiliate network then redirects the victim to another advertiser's domain.

**D.   Defendants' Attempts to Hide Their Unlawful Activity**

56.   Defendants knew that their marketing activities violated the law, which is demonstrated by their extensive efforts to hide their involvement in the scheme.

57.   Defendants' obfuscation included using fake names and contact information to register accounts.  For example, Defendants purchased through a reseller a number of domains that it held in accounts with the registrar NameSilo, LLC.  One such account was listed in the name of "Joel Delemford" using the email address joel@dealingwithfe.win.  On information and belief, the name Joel Delemford is fake.  The Delemford account was used to hold a number of domains, including domains used to send Amazon-branded emails.

58.   Defendants also provided fake registrant information for the domains used to send Amazon-branded emails.   For example, the registrant of merilledgeinvestment.com was listed as Dante Newman of Decatuer, GA and the registrant of bellasfoward.com was listed as Marty Che of Brixton Lane, IN.  On information and belief, no person named Marty Che or Dante Newman is associated with Defendants or these domains.

59.    A similar pattern emerges with domains Defendants held in accounts with GoDaddy Inc., another registrar Defendants used.  For example, Defendants used the domain fondationeaccess.com to send Amazon-branded emails. Defendants held that domain in accounts under the names Lori Prescott and Carl Patton.  On information and belief, no person named Lori Prescott or Carl Patton is associated with Defendants or these domains.

60.    Not only did Defendants use fake names to help register, use, and traffic in domains, but Defendants impersonated real people in order to deceive unsuspecting third parties into providing hosting services.

61.    For example, Defendants maintained an account with a third company, Solar VPS, LLC, which provides remote hosting services.  Defendants used this account to send Amazon-branded emails, including from the domains frnchest.com, mtzautowreckin.com, and toyrunssweeps.com.

62.    To obtain this hosting account from Solar VPS, Defendants purchased identities from two individuals online.  In both cases, Defendants placed ads on Craigslist soliciting this personal information in exchange for money.  The individuals who responded to this ad entered into an agreement with Lakeshore Development Grp, LLC.  Among other things, this agreement stated that "Lakeshore Development Grp, LLC [will] use their ID for the sole purpose of

obtaining servers from various ISPs."  As part of this agreement, Defendants received a photograph of each person's driver's license, along with other personal information.

63.    Besides further hiding their involvement in this scheme, Defendants needed to use these identities because, on information and belief, they and their owner operators, Frederic L Lusky ("Lusky") and Scott E. Maslowe ("Maslowe") were blacklisted by many hosting providers for their involvement in unlawful email activities.  For example, Lusky has been a defendant in prior lawsuits relating to unlawful spamming activities.  Lusky and Maslowe have also been identified multiple times by The Spamhaus Project[1] on its list of the top 200 Known Spam Operations globally.

64.    One of Defendants' agents, Brian Gorman, communicated with the individuals whose identities were used to create an account with Solar VPS. Gorman, using the email address bgorman.noc@gmail.com, facilitated the acquisition of the identities and paid for them using PayPal.  In an exchange with one of those individuals, Gorman stated that Defendants needed the identity because "I am an e-mail marketing company and I am constantly looking to rent

---

[1] The Spamhaus Project is an international non-profit that tracks spam related threats (among other things).  *See* https://www.spamhaus.org/organization/.

cloud space from cloud hosters [sic].  However with my name known in the community most places will not sell to me."

## V.      CAUSES OF ACTION

## <u>FIRST CAUSE OF ACTION</u>

### Trademark Infringement (15 U.S.C. § 1114)

65.      Amazon incorporates by reference the factual allegations contained in Sections I–IV as though set forth herein.

66.      Defendants' activities infringe the Amazon Trademarks.

67.      Amazon advertises, markets, and distributes its products and services using the Amazon Trademarks, and it uses these trademarks to distinguish its products and services from the products and services of others in the same or related fields.

68.      Because of Amazon's long, continuous, and exclusive use of the Amazon Trademarks, they have come to mean, and are understood by customers, users, and the public to signify, products and services from Amazon.

69.      Defendants use the Amazon Trademarks in commerce in a manner that is likely to cause confusion, mistake, or deception as to the source, origin, or authenticity of Defendants' emails.

70.   Further, Defendants' activities are likely to lead the public to conclude, incorrectly, that Defendants' emails originate with or are authorized by Amazon, thereby harming Amazon and the public.

71.   At a minimum, Defendants acted with willful blindness to, or in reckless disregard of, their authority to use the Amazon Trademarks and the confusion that the use of those trademarks would have on consumers as to the source, sponsorship, affiliation or approval by Amazon of Defendants' emails.

72.   Defendants are subject to liability for the wrongful conduct alleged herein, both directly and under various principles of secondary liability, including without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

73.   As a result of Defendants' wrongful conduct, Amazon is entitled to recover its actual damages, Defendants' profits attributable to the infringement, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a)–(b).  The amount of money due from Defendants to Amazon is unknown to Amazon and cannot be ascertained without a detailed accounting by Defendants.  Alternatively, Amazon is entitled to statutory damages under 15 U.S.C. § 1117(c).

74.   Amazon is further entitled to injunctive relief, as set forth in the Prayer for Relief below.  Amazon has no adequate remedy at law for Defendants'

wrongful conduct because, among other things: (a) the Amazon Trademarks are unique and valuable property; (b) Defendants' infringement constitutes harm to Amazon's reputation and goodwill such that Amazon could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing websites; and (d) Defendants' wrongful conduct, and the resulting harm to Amazon, is continuing.

## SECOND CAUSE OF ACTION

### False Designation of Origin, Sponsorship, Approval, or Association and False Advertising (15 U.S.C. § 1125(a))

75.     Amazon incorporates by reference the factual allegations contained in Sections I–IV as though set forth herein.

76.     Amazon advertises, markets, and distributes its products and services using the Amazon Trademarks, and it uses these trademarks to distinguish its products and services from the products and services of others in the same or related fields.

77.     Because of Amazon's long, continuous, and exclusive use of the Amazon Trademarks, they have come to mean, and are understood by customers, end users, and the public to signify, products and services from Amazon.

78.     Amazon has also designed distinctive and aesthetically pleasing displays, logos, icons, and graphic images (collectively, "Amazon designs") for its websites.

79.     Defendants' wrongful conduct includes the use of the Amazon Trademarks, Amazon's name, and/or imitation designs (specifically displays, logos, icons, and/or graphic designs virtually indistinguishable from the Amazon designs) in connection with Defendants' commercial advertising or promotion.

80.     Defendants have used, and continue to use, the Amazon Trademarks, Amazon's name, and/or imitation designs to deceive customers.  On information and belief, Defendants' wrongful conduct misleads and confuses their users and the public as to the origin and authenticity of the goods and services advertised, marketed, offered or distributed in connection with Amazon's trademarks, name, and imitation visual designs, and wrongfully trades upon Amazon's goodwill and business reputation.

81.     Defendants' acts constitute willful false statements in connection with goods and/or services distributed in interstate commerce, in violation of 15 U.S.C. § 1125(a).

82.     Defendants are subject to liability for the wrongful conduct alleged herein, both directly and under various principles of secondary liability, including

without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

83.    Amazon is further entitled to injunctive relief, as set forth in the Prayer for Relief below.  Defendants' acts have caused irreparable injury to Amazon.  The injury to Amazon is and continues to be ongoing and irreparable. An award of monetary damages cannot fully compensate Amazon for its injuries, and Amazon lacks an adequate remedy at law.

84.    As a result of Defendants' wrongful conduct, Amazon is entitled to recover its actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a)–(b).  The amount of money due from Defendants to Amazon is unknown to Amazon and cannot be ascertained without a detailed accounting by Defendants.

## THIRD CAUSE OF ACTION

### Trademark Dilution (15 U.S.C. § 1125(c))

85.    Amazon incorporates by reference the factual allegations contained in Sections I–IV as though set forth herein.

86.    Amazon has exclusively and continuously promoted and used the Amazon Trademarks.  As one of the world's most well-known technology companies, the Amazon Trademarks have become famous, distinctive and well-

known symbols of Amazon—well before the Defendants began using the Amazon Trademarks in association with their goods or services unaffiliated with Amazon through the Defendants' illegal use and infringement of the Amazon Trademarks.

87.    The actions of the Defendants including, but not limited to, their unauthorized use of the Amazon Trademarks in commerce to deceive users into believing Defendants' emails are affiliated with Amazon are likely to cause dilution of the Amazon Trademarks by blurring and tarnishment in violation of 15 U.S.C. § 1125(c).

88.    As a result of Defendants' willful conduct, Amazon is entitled to recover its actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a).

89.    Amazon is further entitled to injunctive relief, as set forth in the Prayer for Relief below.  Defendants' acts have caused irreparable injury to Amazon.  The injury to Amazon is and continues to be ongoing and irreparable. An award of monetary damages cannot fully compensate Amazon for its injuries, and Amazon lacks an adequate remedy at law.

### FOURTH CAUSE OF ACTION

### Cybersquatting (15 U.S.C. § 1125(d))

90.     Amazon incorporates by reference the factual allegations contained in Sections I–IV as though set forth herein.

91.     Amazon has exclusively and continuously promoted and used the Amazon Trademarks.   As one of the world's most well-known technology companies, the Amazon Trademarks have become famous, distinctive, and well-known symbols of Amazon—well before Defendants registered the domains amazoncashe.com, amazonhonecareer.com, and amazonchicagojobs.com.

92.     Defendants registered, used, or trafficked in the domains amazoncashe.com, amazonhonecareer.com, and amazonchicagojobs.com with a bad faith intent to profit from the Amazon Trademarks.

93.     The domains amazoncashe.com, amazonhonecareer.com, and amazonchicagojobs.com are confusingly similar to or dilutive of the Amazon Trademarks.

94.     Amazon is entitled to actual damages under 15 U.S.C. § 1117(a), or in the alternative, statutory damages under 15 U.S.C. § 1125(d)(1).

95.     Amazon is entitled to have ownership of the domains amazoncashe.com, amazonhonecareer.com, and amazonchicagojobs.com transferred to them, or in the alternative to have this domain forfeited or cancelled.

96.     Amazon is further entitled to injunctive relief, as set forth in the Prayer for Relief below.  In addition to the significant harm that Defendants have caused to innocent customers, Defendants' acts have caused irreparable injury to Amazon.  The injury to Amazon is and continues to be ongoing and irreparable. An award of monetary damages cannot fully compensate Amazon for its injuries, and Amazon lacks an adequate remedy at law.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Amazon respectfully prays for the following relief:

A.      That the Court enter judgment in Amazon's favor on all claims;

B.      That the Court issue an order permanently enjoining Defendants, their officers, agents, representatives, employees, successors and assigns, and all others in active concert or participation with them, from:

(i)     Using the Amazon Trademarks in connection with any offer, survey, commercial email, marketing campaign, or website;

(ii)    Using any other indication of Amazon's brand in connection with any offer, survey, commercial email, marketing campaign, or website;

(iii)    Making any statement of an affiliation or connection to Amazon in connection with any offer, survey, commercial email, marketing campaign, or website; or

(iv)    assisting, aiding or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (i) through (iii) above;

C.    That the Court enter an order requiring Defendants to provide Amazon a full and complete accounting of all gross and net amounts earned in connection with the scheme alleged in this Complaint;

D.    That Defendants' profits from the unlawful scheme alleged in this Complaint be disgorged pursuant to 15 U.S.C. § 1117(a);

E.    That Defendants be required to pay all general, special, actual, and statutory damages which Amazon has sustained, or will sustain, as a consequence of Defendants' unlawful acts, and that such damages be enhanced, doubled, or trebled as provided for by 15 U.S.C. § 1117(a)–(b), or otherwise allowed by law;

F.     That Defendants be required to pay the costs of this action and Amazon's reasonable attorneys' fees incurred in prosecuting this action, as provided for by 15 U.S.C. § 1117 or otherwise by law; and

G.     That the Court grant Amazon such other, further, and additional relief as the Court deems just and equitable.

DATED this 1st day of June, 2020.

McDONALD HOPKINS PLC

By *s/ Timothy J. Lowe*
James J. Giszczak (P46917)
Timothy J. Lowe (P68669)
39533 Woodward Avenue, Suite 318
Bloomfield Hills, MI 48304
Phone: (248) 646-5070
Email: jgiszczak@mcdonaldhopkins.com
          tlowe@mcdonaldhopkins.com

DAVIS WRIGHT TREMAINE LLP

Bonnie E. MacNaughton
Sara A. Fairchild
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Phone:  (206) 622-3150
Fax: (206) 757-7700
Email:  bonniemacnaughton@dwt.com
            sarafairchild@dwt.com

Meagan A. Himes
1300 SW Fifth Avenue, Suite 2400
Portland, OR 97201
Phone:  (503) 241-2300
Fax:  (503) 778-5299
Email:  meaganhimes@dwt.com

*Attorneys for Plaintiff Amazon.com, Inc.*